UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IETIA PRICE,

    Plaintiff,

v.                                      CASE NO. 3:15-cv-1148-J-34MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

    Defendant.
_____/

### REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. On March 24, 2014, Plaintiff applied for DIB and SSI payments alleging that she became disabled on November 2, 2013. (Tr. 201-11.) Plaintiff's claims were denied initially and on reconsideration. A hearing was held before the assigned Administrative Law Judge ("ALJ") on March 31, 2015, at which Plaintiff was represented by a non-attorney representative. (Tr. 33-63.) The ALJ issued an

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

unfavorable decision on April 24, 2015, finding Plaintiff not disabled. (Tr. 15-25.)

Plaintiff is appealing the Commissioner's decision that she was not disabled. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **REVERSED and REMANDED**.

## I.    Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into

account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

Plaintiff argues two general points on appeal.  First, Plaintiff argues that the ALJ failed to properly weigh the opinions of Plaintiff's treating physicians, Kevin Sierra, M.D. and Walwin Metzger, M.D.  Plaintiff contends that the ALJ failed to articulate good cause for discounting their opinions.  Second, Plaintiff contends that the ALJ erred by failing to properly evaluate her credibility.  Defendant argues that the ALJ's evaluation of the medical opinions of record is clearly articulated and supported by substantial evidence.  Defendant also argues that the ALJ properly evaluated Plaintiff's credibility and found Plaintiff to be not entirely credible.

### A.   Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. See 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Substantial weight must be given to a treating physician's opinion unless there is good cause to do

otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, see *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, at *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v.*

*Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam); s*ee also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources).  While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision.  SSR 96-6p.

### B.     The ALJ's Decision

The ALJ found that Plaintiff had severe impairments, including obesity, degenerative joint disease of the knees, diabetes mellitus type II (uncomplicated), benign essential hypertension, sarcoidosis, and obstructive sleep apnea.  (Tr. 18.).  At step three in the evaluation process, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in  20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 19.)

At step four, the ALJ made the following residual functional capacity ("RFC") determination:

> After careful consideration of the entire record, the

> undersigned finds that the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except never climb ladders, ropes and scaffolds; occasional climbing stairs/ramps, balancing, stooping, kneeling, crouching, and crawling; avoid concentrated exposure to unprotected heights, moving mechanical parts, humidity and wetness, extreme cold, heat, vibration and noises. Lastly, avoid concentrated exposure to respiratory irritants, such as fumes, odors, dusts, gases and poor ventilation.

(Tr. 20.) In making this finding, the ALJ gave "little weight" to Dr. Metzger's treating opinions regarding Plaintiff's limitations and ability to work. (Tr. 23.) In discounting Dr. Metzger's opinions, the ALJ reasoned:

> Although, [sic] Dr. Metzger had a treating relationship with the claimant, the treatment history was quite brief (3 visits in 2012, 4 in 2013 and 3 in 2014). Further, Dr. Metzger completed the assessment without seeing the claimant for approximately 5 months from her last visit. The doctor's own opinion is not supported by the medical evidence of record, or even his own treatment notes (Exhibit 11F).

(*Id.*)

The ALJ also gave "little weight" to the opinions of Dr. Sierra because "his treatment history was quite brief (3 visits, August 2013, February 2014 and July 2014)." (Tr. 24 (citations omitted).)

With respect to Plaintiff's subjective statements regarding limitations and pain, the ALJ "found it reasonable to conclude that [her] allegations of an inability to sustain regular and continuing work secondary to pain and limitations do not find full support in the medical evidence of record or in her testimony." (Tr. 23.) The ALJ found that Plaintiff's testimony "casts doubt upon the true extent of her

6

limitations and her credibility." (*Id.*)

With the benefit of testimony from a vocational expert, the ALJ determined that Plaintiff is capable of performing her past relevant work as a case manager, juvenile counselor, and substance abuse counselor. (Tr. 25.) As such, the ALJ found that Plaintiff was not disabled. (*Id.*)

### C.     The ALJ's Decision is Not Supported by Substantial Evidence

Plaintiff initially argues that the ALJ erred by discounting the opinions of Drs. Metzger and Sierra, Plaintiff's treating physicians. Specifically, Plaintiff contends that the ALJ failed to articulate clear reasons supported by substantial evidence for discounting the treating opinions. In support, Plaintiff points to the ALJ's basis for discounting the treating physicians based on their "brief" treatment of Plaintiff. Plaintiff references the ALJ's inaccurate statements with respect to Plaintiff's treatment history with Drs. Metzger and Sierra. Plaintiff also contends that the ALJ's analysis of Plaintiff's treatment history is not supported by substantial evidence in light of Plaintiff's financial situation. Finally, Plaintiff argues that the ALJ's vague reason for discounting Dr. Metzger's opinions based on inconsistencies with the medical evidence of record is not supported by substantial evidence.

#### i.     Dr. Metzger

Plaintiff received general medical care from Dr. Metzger from February 13, 2012 through January 6, 2015. (Tr. 373-95, 449-54, 491-93.) On January 6,

2015, Dr. Metzger completed a Physical Medical Source Statement ("MSS"). (Tr. 462-66.) Dr. Metzger diagnosed Ms. Price with essential hypertension, severe degenerative joint disease of the knees with persistent pain, morbid obesity, depression, and diabetes mellitus, among other impairments. (Tr. 462.) Dr. Metzger rated Plaintiff's prognosis as "fair" and noted symptoms, including severe knee pain (left greater than right), gait disturbance, and abdominal pain. (*Id.*) Dr. Metzger opined that Plaintiff could walk a distance of less than one block, sit or stand/walk for less than two hours at a time in a workday, and that she would need unscheduled breaks six times in a workday. (Tr. 464-65.) Additionally, Dr. Metzger opined that Plaintiff's legs should be elevated "as high as possible" with prolonged sitting, that Plaintiff required the use of an assistive device for occasional standing and walking, and could lift only ten pounds occasionally. (Tr. 465.) Dr. Metzger ultimately opined that Plaintiff would be absent from work about twice per month due to her impairments and that her limitations applied as of March 2012. (Tr. 466.)

The undersigned agrees with Plaintiff in that the Court cannot conclude that the ALJ applied the correct legal standards with respect to evaluating Dr. Metzger's opinions and that the Commissioner's findings in this regard are supported by substantial evidence. As an initial matter, it is important to note that the ALJ's statements regarding Plaintiff's treatment history with Dr. Metzger are inaccurate. One reason provided by the ALJ for discounting Dr. Metzger's

8

opinions was Plaintiff's "brief" treatment history with Dr. Metzger.  The ALJ stated that Plaintiff treated with Dr. Metzger three times in 2012, four times in 2013, and three times in 2014, for a total of ten visits.  The record reflects, however, that Plaintiff visited with Dr. Metzger eleven times – four times in 2012 (February (Tr. 389-90), April (Tr. 387-88), August (Tr. 385-86), and November (Tr. 383-84)), four times in 2013 (April (Tr. 381-82), August (Tr. 379-80), September (Tr. 377-78), and December (Tr. 375-76)), and three times in 2014 (March (Tr. 373-74), June (Tr. 452-54), and September (Tr. 449-51)).[2]  The ALJ also discounted Dr. Metzger's opinions because he "completed the assessment without seeing the claimant for approximately five months from her last visit." (Tr. 23.)  The record reflects, however, that Dr. Metzger completed the MSS (January 6, 2015) less than *four* months from Plaintiff's previous visit (September 10, 2014).  To the extent the ALJ attempts to reference a gap in treatment as a reason to discount the MSS, the ALJ's discussion in this regard is misleading at best, as the record indicates that Dr. Metzger did "see" Plaintiff on January 6, 2015, the date he completed the MSS.  (Tr. 491-93.)

These errors notwithstanding, the ALJ's reasons for discounting Dr. Metzger's opinions based on the treating relationship are improper.  First, while the "length of a treating relationship is 'a factor for making more nuanced

---

[2] There also appears to be an additional review of Plaintiff's lab work by Dr. Metzger in February 2014.  (Tr. 455-59.)  Notably, this additional review was not discussed by the ALJ in the decision to discount Dr. Metzger's opinions.

9

determinations as to the quality of the medical opinion offered, [it] cannot be used to circumvent the 'good cause' requirement.'" *Shuren v. Comm'r of Soc. Sec.*, No. 6:11-cv-1191-Orl-GJK, 2012 WL 4194665, at *9 (M.D. Fla. Sept. 19, 2012) (citing *Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593, at *10 (M.D. Fla. Jan. 4, 2008)). "The ALJ *only* considers this factor *after determining the physician's opinion is not entitled to controlling weight.*" *Wallace v. Astrue*, No. 2:07-cv-850-WC, 2008 WL 2428926, at *5 (M.D. Ala. June 12, 2008) (citing 20 C.F.R. § 416.927(d)(2)(i)) (emphasis in original). "If the relationship between the physician and the patient, however, is so brief or inconsequential that it may not rightly be characterized as a 'treating relationship,' then the ALJ would not be held to the 'good cause' standard." *Id.* (citing *Poplardo*, 2008 WL 68593, at *10).

Here, the relationship between Plaintiff and Dr. Metzger does constitute a substantial treating relationship. Dr. Metzger treated Plaintiff on eleven occasions (plus an additional review of lab work) over the course of three years, prior to completing the MSS.[3] Each visit included treatment notes and observations of Plaintiff's physical status, and there is no evidence (or argument) that Dr. Metzger deviated in any way from accepted medical practice. *See, e.g., Poplardo*, 2008 WL 68593, at *11 (rejecting ALJ's reason for discounting physician's opinions based on a "limited" treating relationship where the plaintiff's four visits

---

[3] Interestingly, the ALJ afforded "substantial weight" to the state agency medical consultant who never examined Plaintiff.

constituted a substantial treating relationship in that the visits included treatment notes and no evidence existed that the physician deviated from accepted medical practice); *Wallace*, 2008 WL 2428926, at *5 (rejecting ALJ's reason for discounting physician's opinions based on a "minimal" treating relationship where the plaintiff's five visits over the course of two years constituted a substantial treating relationship in that the visits included treatment notes and no evidence existed that the physician deviated from accepted medical practice); *see also Cole v. Comm'r of Soc. Sec.*, No. 8:11-cv-1836-T-33MAP, 2013 WL 440576, at *3 (M.D. Fla. Jan. 17, 2013) (finding no good cause existed to discount doctor's opinions based on a "brief" treatment history where doctor evaluated the plaintiff the longest, evaluated the plaintiff's limitations, and met with the plaintiff seven times), report and recommendation adopted in 2013 WL 436179; *Shuren*, 2012 WL 4194665, at *9 (holding that ALJ's rejection of physician's opinions because "his treating relationship was only 6-8 months, consisting of thirty minute sessions that were primarily for medication review" was "not a valid basis for discounting [the physician's] opinions") (internal quotations omitted); *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, at *3 (M.D. Fla. Mar. 10, 2008) ("There is no basis in law, or reason, for concluding that a physician who examined a patient four times over a two-month period should not be given the weight accorded a treating physician.  Plainly, the four examinations would provide the physician with ample opportunity to accurately evaluate a patient.").

The ALJ failed to provide good cause to discount Dr. Metzger's opinions based on his treating relationship with Plaintiff.

Nevertheless, the record is replete with notations regarding Plaintiff's lack of insurance coverage, lack of steady income, and precarious living situation. (*See, e.g.,*Tr. 368 ("lostr [sic] job and ins[urance], car broke down and lots of issues, part time work."); 374, 376, 382 ("[N]o insurance – $35.00 for today's visit."), 384 ("[N]o insurance, no charge."); 386 ("[N]o insurance, charged $30.00 for today's visit."), 388 ("[N]o insurance $35.00 today's fee."); 451 ("[Patient] [c]laimed that she will be homeless at the end of the month . . . charged 20 dollars for today's visit.").) Because the number of visits by Plaintiff to Dr. Metzger or any purported gaps in treatment may be explained by Plaintiff's lack of insurance and inability to afford treatment, the ALJ should have addressed whether Plaintiff was able to afford such treatment. *See Beegle v. Comm'r of Soc. Sec.*, 482 F. App'x 483, 487 (11th Cir. 2012) ("[T]he ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment."); *Cruz v. Colvin*, No. 1:14-cv-3308-AJB, 2016 WL 1237853, at *13 (N.D. Ga. Mar. 29, 2016) (holding that ALJ erred in discounting doctors' opinions based on "sporadic medical treatment" and intermittent treatment record because the ALJ failed to discuss the plaintiff's inability to afford treatment where the record was replete

12

with references to the plaintiff's financial condition).

Finally, the ALJ's reason for discounting Dr. Metzger's opinions because the opinions are "not supported by the medical evidence of record, or even his own treatment notes," does not constitute sufficient good cause. It is clear that "[c]onclusory statements by an ALJ that an opinion is inconsistent or not bolstered by the medical record are insufficient to constitute good cause for rejecting a treating physician's opinion unless the ALJ articulates factual support for such a conclusion." *Hubbell-Canamucio v. Comm'r of Soc. Sec.*, No. 2:15-cv-21-FtM-DNF, 2016 WL 944262, at *4 (M.D. Fa. Mar. 14, 2016) (citing *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012)). In discussing this reason for discounting Dr. Metzger's opinions, the ALJ merely cited the MSS completed by Dr. Metzger without articulating factual support for why such opinions were inconsistent with the medical records or Dr. Metzger's treatment notes. As such, the ALJ's conclusory statement is insufficient. *Cf., Beard v. Colvin*, Case No. 3:14-cv-18-J-JRK, 2015 WL 1138447 at *6 (M.D. Fla. Mar. 13, 2015) (stating that the ALJ's failure to explain how the treating physician's opinion "is inconsistent with the 'overall evidence' . . . frustrates judicial review and precludes a finding that the ALJ's treatment of [the treating physician's] opinion is supported by substantial evidence").

The ALJ's error in this regard is significant because there appears to be relevant medical evidence supporting Dr. Metzger's opinions. *See, e.g., Goble v.*

*Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)) ("An ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding."). For example, x-rays of Plaintiff's left knee taken on August 27, 2013 show "significant narrowing of the medial joint compartment with subchondral cyst formation and marginal osteophytes," and "severe narrowing of the patellofemoral space also with subchondral cyst formation and prominent osteophytes." (Tr. 395.) The impression indicated "[a]dvanced degenerative osteoarthritis involving mostly the medial joint compartment and the patellofemoral space." (*Id.*)

Paul Lunseth, M.D., who examined Plaintiff, noted that "x-ray[s] show marked narrowing of medial joint line with small osteophytes, and [] intra-articular irregularities and cystic changes present in the proximal tibia indicative of either osteoarthritis or avascular necrosis of the proximal tibia." (Tr. 366.) X-rays taken at Dr. Lunseth's office revealed "grade 3 Kellegren Lawrence changes" in the left knee "while the right knee has grade 2." (*Id.*) Dr. Lunseth spoke with another doctor about the x-rays and they "requested viscoelastic substance from [U]nited [H]ealthcare" to "inject[] into [Plaintiff's] left knee." (Tr. 359.) Dr. Lunseth stated that Plaintiff "may still, in the near future, undergo surgery but hopefully can be delayed with either skin or viscoelastic material in the knee." (*Id.*)

The opinions of Dr. Sierra, which were also discounted by the ALJ, are

consistent with Dr. Metzger's opinions. (Tr. 477-81.) Finally, Dr. Metzger's treatment notes appear consistent with his opinions, as he reported persistent knee pain (375, 377, 380-84, 387-89, 450-51, 492), impaired pulmonary function (Tr. 374, 380, 382, 384, 386, 388), and gait disturbance due to severe knee pain (Tr. 492). He diagnosed Plaintiff with degenerative joint disease in the knees, depression, obesity, and/or diabetes mellitus on multiple visits (Tr. 374, 376, 378, 380, 382, 384, 386, 388, 390, 450, 453). Dr. Metzger instructed Plaintiff to use a "walking cane" in April 2013. (Tr. 382.) For the foregoing reasons, the ALJ failed to articulate sufficient good cause to discount Dr. Metzger's treating opinions.

      ii.    **Dr. Sierra**

The ALJ similarly discounted Dr. Sierra's opinions without articulating sufficient good cause. Plaintiff received medical treatment for her pulmonary conditions from Dr. Sierra, a specialist, from August 27, 2013 through July 21, 2014. (Tr. 368-71, 467-68.) Dr. Sierra completed an MSS on October 24, 2014. (Tr. 477-81.) Dr. Sierra diagnosed Ms. Price with hypertension, arthritis, rhinitis, obstructive sleep apnea, sarcoidosis, and hypoxemia. (Tr. 477.) Dr. Sierra rated Plaintiff's prognosis as "stable-poor" and noted symptoms, including worsening daytime hypersomnolence, fatigue, and inability to sleep at night due to sleep apnea. (*Id.*) Dr. Sierra opined that Plaintiff's symptoms would constantly interfere with her attention and concentration. (Tr. 478.) He opined that Plaintiff could stand/walk for less than two hours at a time in a workday, and that she

would need unscheduled breaks during the workday. (Tr. 479.) Additionally, Dr. Sierra opined that Plaintiff's legs should be elevated with prolonged sitting, that Plaintiff required the use of an assistive device for occasional standing and walking, and could not lift ten pounds. (Tr. 480.) Dr. Sierra ultimately opined that Plaintiff would be absent from work three times or more per month due to her impairments and that her limitations applied as of October 24, 2014. (Tr. 481.)

The ALJ afforded "little weight" to the opinions of Dr. Sierra solely because "his history of treatment was quite brief (3 visits, August 2013, February 2014 and July 2014)." (Tr. 24.) However, as discussed above, Dr. Sierra's treating relationship cannot be used to circumvent the "good cause" requirement. *Shuren*, 2012 WL 4194665, at *9; *Poplardo*, 2008 WL 68593, at *10. Moreover, the relationship between Plaintiff and Dr. Sierra constitutes a substantial treating relationship. Dr. Sierra examined Plaintiff three times over the course of eleven months, prior to completing the MSS. Each visit included treatment notes and observations of Plaintiff's physical status, and there is no evidence (or argument) that Dr. Sierra deviated in any way from accepted medical practice. *Poplardo*, 2008 WL 68593, at *11; *Wallace*, 2008 WL 2428926, at *5; *see also Hewitt v. Comm'r of Soc. Sec.*, No. 6:07-cv-140-Orl-UAM, 2007 WL 4462190, at *8 (M.D. Fla. Dec. 14, 2007) (holding that ALJ failed to provide good cause for rejecting physician's opinions based on the length of the relationship, which the ALJ mistakenly stated consisted of a single visit, where the doctor saw the plaintiff on

two occasions); *Cronon v. Barnhart*, 244 F. Supp. 2d 1286, 1293 n.21 (N.D. Ala. 2003) (finding that since specialist had examined patient three times he qualified as a treating physician). Also, as discussed in detail above, the ALJ should have addressed whether Plaintiff was able to afford further treatment in light of her financial status clearly set forth in the record. *See Beegle*, 482 F. App'x at 487 ("[T]he ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment."); *Cruz*, 2016 WL 1237853, at *13 (holding that ALJ erred in discounting doctors' opinions based on "sporadic medical treatment" and intermittent treatment record because the ALJ failed to discuss the plaintiff's inability to afford treatment where the record was replete with references to the plaintiff's financial condition).

Although the ALJ gave no other explicit reason for discounting Dr. Sierra's opinions, the Commissioner argues that the ALJ implicitly rejected Dr. Sierra's opinions as inconsistent with the record medical evidence and Dr. Sierra's own treatment. (Doc. 25 at 11-14.) As support, the Commissioner references the ALJ's recitation of Dr. Sierra's treatment in the decision. (Tr. 22.) However, the ALJ's recitation in this regard lacks sufficient clarity to support an implicit reason to reject Dr. Sierra's opinions as the Commissioner suggests, especially in light of

an ALJ's heightened duty to discuss medical opinions.[4] *See, e.g., McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 (11th Cir. 2015) (holding that an ALJ has a heightened duty to discuss medical opinions and may not implicitly reject them where the reasons are not obvious).

Therefore, the undersigned finds that the ALJ's decision is not supported by substantial evidence. This issue is dispositive and, therefore, it is unnecessary for the Court to address Plaintiff's remaining arguments, including Plaintiff's argument that the ALJ's credibility determination is not supported by substantial evidence. *See, e.g., Alexander v. Comm'r of Soc. Sec.*, No. 8:13-cv-1602-T-GJK, 2014 WL 4211311, at *3 n.3 (M.D. Fla. Aug. 26, 2014) (citing *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (stating that on remand the ALJ must reassess the entire record)). However, on remand, the ALJ should also be directed to reconsider Plaintiff's credibility.

### III. Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to: (a) reconsider the opinions of Drs. Metzger and Sierra, explain what weight they are being accorded, and the reasons therefor; (b) reconsider Plaintiff's credibility, if

---

[4] For example, in the section of the decision referenced by the Commissioner, the ALJ recited (without discussion) many of Dr. Sierra's opinions contained in the MSS that the ALJ rejected.

necessary; and (c) conduct any further proceedings deemed appropriate.

2. Plaintiff's counsel be advised that, in the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No.: 6:12-mc-124-Orl-22 (*In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*).

3. The Clerk of Court be directed to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on December 15, 2016.

                                        MONTE C. RICHARDSON
                                        UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record